**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | * |
| | * |
| v. | * |
| | * |
| **AUSTIN SMITH,** | * |
| a/k/a "John Ried," | * |
| | * |
| **Defendant** | * |

**CRIMINAL NO.**

**(Conspiracy to Commit Wire Fraud,**
**18 U.S.C. § 1349)**

*******

## INFORMATION

The Acting Chief of the U.S. Department of Justice, Criminal Division, Fraud Section charges that:

### GENERAL ALLEGATIONS

#### The Defendant and Related Entities

1.    The defendant, **AUSTIN SMITH (SMITH)**, was a resident of the country of Israel.

2.    Yukom Communications was an Israel-based business that provided sales and marketing services, including "retention services" for two internet-based businesses with the brand names BinaryBook and BigOption.

3.    Numaris Communications was an Israel-based business that provided sales and marketing services, including "retention services" for BinaryBook.   Numaris coordinated its work with Yukom and shared resources, including email solicitations and call scripts.

4.    BinaryBook and BigOption sold and marketed financial instruments known as "binary options."   BinaryBook and BigOption sold and marketed binary options to customers located throughout the world, including in the United States and within the District of Maryland.

5.    A conversion agent was a salesperson responsible for converting a prospective binary options customer into an investor and obtaining an initial deposit of funds.   A retention

agent was responsible for working with the investor going forward with the goal of obtaining additional deposits.

6.      Retention services were services provided with the objective to obtain additional deposits from investors who had previously made deposits.

7.      Yukom provided retention services on behalf of BinaryBook and BigOption through the use of communications by email and by phone to individuals in the United States, including in the District of Maryland, and elsewhere throughout the world.

8.      Numaris also provided retention services on behalf of BinaryBook through the use of communications by email and by phone to individuals in the United States, including in the District of Maryland, and elsewhere throughout the world.

9.      Yukom and Numaris salespeople sometimes referred to themselves as "brokers" or "traders" to potential investors.

10.     From in or about August 2015 through in or about January 2016, **SMITH** worked as a sales representative or otherwise supervised BinaryBook representatives at Numaris.

11.     In correspondence and other communications, **SMITH** identified himself as an "Expert Trader" and a "Senior Broker" for BinaryBook.

**Binary Options**

12.     A binary option was a type of option contract in which the payout depended on the outcome of a discrete event, typically related to whether the price of a particular asset—such as a stock or a commodity—would rise above or fall below a specified amount.   Unlike standard options, investors in binary options were not being given the opportunity to actually purchase a stock or a commodity but, rather, were effectively predicting whether its price would be above or below a certain amount at a certain time of the day.   The option holder was typically promised

that when the binary option expired, the option holder would receive either a pre-determined amount of cash or nothing.

13.     While some binary options were listed on registered exchanges or traded on a designated contract market that were subject to oversight by U.S. regulators such as the Securities and Exchange Commission and the Commodity Futures Trading Commission, neither BinaryBook nor BigOption sold binary options that were traded on a legal and regulated designated contract market in the United States.

## Related Definitions

14.     A "bonus" was an amount that representatives of BinaryBook and BigOption could contribute to an investor's account to be used in trading.

15.     A "risk free trade" or "insured trade" was a trade offered by representatives to investors in which the investors' accounts would be reimbursed by "bonus" funds in the event of a losing trade.

## Victim A

16.     Victim A, an investor in BinaryBook, was a resident of Gaithersburg, Maryland, located in the District of Maryland.

## COUNT ONE
### (Conspiracy to Commit Wire Fraud)

17.     Paragraphs 1 through 16 of this Information are incorporated here.

18.     Beginning in or about August 2015 through in around January 2016, in the District of Maryland and elsewhere, the defendant,

### AUSTIN SMITH,

and others known and unknown, did knowingly combine, conspire, confederate, and agree with each other and others, both known and unknown, to commit offenses against the United States, to

3

wit, wire fraud, that is, knowingly and with intent to defraud, having devised and intended to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, promises, and knowing concealment concerning a material fact or matter, to transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures and sounds for the purpose of executing the scheme and artifice, in violation of Title 18, United States Code, Section 1343.

### Purpose of the Conspiracy

19.     It was the purpose of the conspiracy for **SMITH** and representatives of Yukom, Numaris, BinaryBook, BigOption, and other entities to obtain the maximum deposit from investors and to take steps to ensure that investors lost the money in their accounts—thereby making money for themselves and their brand in the process.

### Manner and Means of the Conspiracy

20.     **SMITH** and his co-conspirators induced investors to deposit funds based on misrepresentations, including: (1) false statements and material omissions regarding the alignment of financial incentives between investors and representatives; (2) false statements and material omissions regarding the suitability of binary options as investments and returns on investments in binary options; (3) false statements and material omissions about the names, qualifications, and physical location of representatives assisting investors; and (4) false statements and material omissions regarding investors' ability to withdraw investment funds and about the reasons that funds could not be withdrawn.  Representatives of BinaryBook and BigOption also made false statements and material omissions regarding—and engaged in the deceptive use of—so-called "bonuses," "risk free trades," and "insured trades."

## **Overt Act in Furtherance of the Conspiracy**

21.    On or about August 28, 2015, in furtherance of the conspiracy and to effect the

objects of the conspiracy, the Defendant sent an email through interstate and foreign commerce to

Victim A on behalf of BinaryBook at Victim A's Google email account regarding bank wire

transfer instructions while Victim A was in the District of Maryland.

18 U.S.C. § 1349

Robert Zink /JCC

Robert Zink
Acting Chief, Fraud Section
U.S. Department of Justice, Criminal Division